JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

John Doe 1, and Jane Doe 1, in their own capacity and as parent of Child Doe1, et al.

**(b)** County of Residence of First Listed Plaintiff   **Delaware County**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Carmen A. De Gisi, De Gisi Law Group, LLC, 462 Germantown Pike, Suite 11, Lafayette Hill, PA 19428 (610) 897-8721

## DEFENDANTS

Springfield School District, et al.

County of Residence of First Listed Defendant   **Delaware County**
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1  U.S. Government Plaintiff
- [x] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 2  U.S. Government Defendant
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | | | [ ] 790 Other Labor Litigation | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 791 Employee Retirement Income Security Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| | | | | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 896 Arbitration |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [x] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec 12101, et seq. and 29 USC Section 794

Brief description of cause:
Violations of the American Disability Act and Section 504 of the Rehabilitation Act

## VII. REQUESTED IN COMPLAINT:

- [x] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Preliminary injunction

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____

Address of Defendant: _____

Place of Accident, Incident or Transaction: _____

---

***RELATED CASE, IF ANY:***

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?     Yes ☐    No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?     Yes ☐    No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?     Yes ☐    No ☐

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?     Yes ☐    No ☐

I certify that, to my knowledge, the within case ☐ **is** / ☐ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____     _____     _____
                                  *Must sign here*
                           *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.**   *Federal Question Cases:*                      **B.**   *Diversity Jurisdiction Cases:*

| | |
|---|---|
| ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts | ☐ 1. Insurance Contract and Other Contracts |
| ☐ 2. FELA | ☐ 2. Airplane Personal Injury |
| ☐ 3. Jones Act-Personal Injury | ☐ 3. Assault, Defamation |
| ☐ 4. Antitrust | ☐ 4. Marine Personal Injury |
| ☐ 5. Patent | ☐ 5. Motor Vehicle Personal Injury |
| ☐ 6. Labor-Management Relations | ☐ 6. Other Personal Injury *(Please specify)*: _____ |
| ☐ 7. Civil Rights | ☐ 7. Products Liability |
| ☐ 8. Habeas Corpus | ☐ 8. Products Liability – Asbestos |
| ☐ 9. Securities Act(s) Cases | ☐ 9. All other Diversity Cases |
| ☐ 10. Social Security Review Cases |      *(Please specify)*: _____ |
| ☐ 11. All other Federal Question Cases *(Please specify)*: _____ | |

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____, counsel of record *or* pro se plaintiff, do hereby certify:

☐   Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐   Relief other than monetary damages is sought.

DATE: _____     _____     _____
                                 *Sign here if applicable*
                           *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

*Civ. 609 (5/2018)*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JOHN DOE 1 and JANE DOE 1, in their own )
capacity and as parents of CHILD DOE 1, )
JANE DOE 2, in her own capacity as parent of )    Civil Action No.: 2:22-CV-413
CHILD DOE 2, JANE DOE 3, in her own capacity )
and as parent of CHILD DOE 3,  JANE DOE 4, )
in her own capacity and as parent of CHILD )
DOE 4and on behalf of those similarly situated, )
                                 )
         Plaintiffs )
                                 )
         v. )
                                 )
SPRINGFIELD SCHOOL DISTRICT, a )
Pennsylvania governmental entity, BRUCE E. )
LORD, JR., JENNIFER H. LOFLAND, KEVIN )
KEENAN, FRANK AGOVINO, DOMENIC )
BENTIVEGNA, JENNIFER FLYNN, JOSEPH )    JURY TRIAL DEMANDED
SILO, MARGARET G. ROVINSKI, and )
JACQUELINE GUY, all Individual elected )
officials sued in their official capacity as members )
of the BOARD OF SCHOOL DIRECTORS OF )
THE SPRINGFIELD SCHOOL DISTRICT, )
a Pennsylvania elected legislative body, )
                                 )
         Defendants. )

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT AND SECTION 504 OF THE REHABILITATION ACT

Plaintiffs, school-age children attending school in the Springfield School District ("School District") of Delaware County, Pennsylvania, that suffer from disabilities which render them medically vulnerable to COVID-19, by and throughtheir parents, bring this action for declaratory and injunctive relief on behalf of themselves and a class of similarly situated disabled children who are at severe risk of illness and injury due to their disabilities and allege as follows:

1

## INTRODUCTION

1.      Despite a clear understanding of the necessity and importance of in-person education and protecting the mental and physical health and lives of children, the Board of School Directors of the Springfield School District ("School Board"), on January 31, 2022, implemented a masking optional policy for students in grades K-12 despite the community transmission rate of COVID-19 in Delaware County continuing to be in the "High" category according to the Centers for Disease Control ("CDC").[1]

2.      On or about December 9, 2021, The School Board had voted to amend the Health and Safety Plan for the School District in order to require universal masking for all students, staff, and visitors in the School District until optional masking in schools was deemed appropriate by public health institutions.

3.      All authorities, as well as Defendants, agree that in-person instruction is necessary for the mental well-being of all children. *See,* Guidance for COVID-19 Prevention in K-12 Schools, Updated Jan. 6, 2022 ("Students benefit from in-person learning, and safely returning to in-person instruction continues to be a priority.").[2]

---

[1] On January 4, 2022, the School Board, issued a universal masking policy that applied to all students, staff, and visitors that expired Friday, January 28, 2022. "Therefore, in accordance with the guidance of our medical experts, we will be implementing the following modifications: Masking **- SSD has been asked directly by our medical experts to require universal masking indoors for all staff and students**. Their request arises from the pressure medical personnel are feeling to keep pace with the rising demands placed on hospitals trying to serve patients with high medical needs and with the compounded staffing issues associated with holiday exposures. As good community members, we will offer our support to our hospitals by requiring universal masking of all starting Wednesday, January 5, 2022 until January 28, 2022." *See*, 1/4/2022 Updated Guidance posted January 4, 2022 at https://www.ssdcougars.org/reopening-schools.

[2] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html#:~:text=C DC%20recommends%20universal%20indoor%20masking,layered%20prevention%20strategies%20in%20place.

4.      Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[3]

5.      Significantly, asymptomatic carriers of COVID-19 transmit the disease. Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine. Nevertheless, they are estimated to account for more than 50% of transmissions.[4]

6.      "It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19."[5] The CDC explains that a "layered approach" to "reduce the spread of disease" from COVID-19 requires the concurrent use of multiple strategies, of which **"using masks consistently and correctly"** is necessary and has "proven effective."[6]

7.      As recently as January 4, 2022, the CDC reinforced the need for continued application of a "layered approach" to prevention of the spread of COVID-19, requiring universal masking while indoors, stating: "Mask use and layered prevention strategies, such as receiving all recommended vaccination and booster doses, physical distancing, screening testing, and improved ventilation, are key to preventing COVID-19 and decreasing transmission."[7]

---

[3] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[4] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

[5] https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces.

[6] https://www.cdc.gov/mmwr/volumes/70/wr/mm7030e2 .html (emphasis added).

[7] *See* CDC Omicron Variant: What You Need to Know, Updated Dec. 20, 2021, at https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine-isolation-background.html. ("The Omicron

8.    In order to keep children in-school, every step necessary to a "layered approach" for preventing the spread of COVID-19, which requires universal masking, should be followed.  *Id*.

9.    The current, most prevalent variant of COVID-19, known as the Omicron variant, is extremely infectious and is spread much more readily than either the original SARS-CoV-2 strain or the Delta Variant.[8]  Unmasked individuals are both at risk of immediate and irreparable harm from COVID-19, as well as can be the cause of a higher risk of spreading COVID-19 and resultant serious illness and/or death.[9]

10.    Like the rest of Pennsylvania, Delaware County has suffered from the spread of COVID-19.  On August 2, 2021, the CDC listed Delaware County as a community of "substantial transmission" for the coronavirus.[10]  Beginning in August of 2021, and through the date of this filing, Delaware County has been continuously in the substantial and high categories of community transmission rate.  *See* Exhibit 1, CDC COVID Data Tracker through January 28, 2022.[11]

11.    The School Board's decision to adopt an optional masking policy beginning January 31, 2022, does not account for the fact that the community transmission rate of infection from COVID-19 is still in the "High" category because of the Omicron variant, nor that universal

---

variant likely will spread more easily than the original SARS-CoV-2 virus and how easily Omicron spreads compared to Delta remains unknown.  CDC expects that anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms."

[8] https://www.cdc.gov/ coronavirus/2019-ncov/variants/omicron-variant.html.

[9] *Id*.

[10] *See*, Press Release issued By Delaware County on August 5, 2021 title "CDC and PA Health Alert Network Issue Updated COVID-19 Guidance" at
https://delcopa.gov/publicrelations/releases/2021/covid_updatedguidance0805.html.

[11] https://covid.cdc.gov/covid-data-tracker/#county-view?list_select_state=Pennsylvania&data-type=Risk&list_select_county=42045.  Last visited January 31, 2022.

masking is essential to the prevention of the spread of this airborne disease.  *See* Exhibit 1.

12.    According to the Special Education Data Report for 2020-2021 school year,  the School District enrolled 4, 280 students with 174 of those students considered disabled students designated as "Other Health Impairment."  *See* Exhibit 2, Special Education Data Report for 2020-2021 for Springfield School District, published June 2021 by the Pennsylvania State Data Center.

13.    The Board's optional masking policy fails to account for those 174 children in the School District who are medically fragile disabled students who require the protection afforded by universal masking to reduce the risk of spread of COVID-19 and to enable them to have access to the school buildings for in-person instruction.[12]

14.    The Board's optional masking policy forces the parents of medically fragile school children with disabilities to make the shockingly unfair or unjust decision of deciding whether to pull their children out of in-person learning, causing mental harm and havoc on the child and an economic burden on the family, or face the quantifiably increased risk of severe physical illness or death caused by infection with COVID-19.

15.    Since August of 2021 and through the present, due to the substantial and high community transmission rate of infection from COVID-19 in Delaware County, the CDC, the Pennsylvania Department of Health, (PADOH), and the Pennsylvania Department of Education ("PDE") ("CCDOH") have all recommended that school children should universally mask while in school buildings.[13]  *See* Exhibit 1, at p. 2. ("Everyone in Delaware County should wear a mask in

---

[12] These are the most recent figures available.  The Special Education Data Report for 2021-2022 for Springfield School District will not be published until June 2022.

[13] Delaware County does not yet have a functioning Health Department and relies upon the PADOH for COVID-19 related services including "case investigation and surveillance, data reporting, testing and vaccination oversight, public health communications, **official guidance (e.g., masking, social distancing)** and assistance to residents who have

public, indoor settings.")

16.     Further, the American Academy of Pediatrics (AAP) and Children's Hospital of Philadelphia both recommend universal masking in schools.[14]

17.     The Springfield School Board Policy Manual requires that Board "bylaws and policies shall be consistent with law and have a rational and substantial relationship to a legitimate purpose of the Board, and be directed towards the maintenance and support of a thorough and efficient system of public education in this District." *See* Board Policy, Authority and Powers, Code 002, § 2, Powers.[15]

18.     The School Board Policy Manual requires the Board to protect the health and safety of the students by minimizing the transmission of communicable diseases.  *See* School Board Policy Manual, Section 200 – Health Examination, Code 209, Last Revised February 21, 2020.[16]

19.     School Board Policy Manual Section 203 – Communicable Diseases and Immunization, sets forth, in pertinent part:

**"Purpose**.

The Board of School Directors ("Board") of Springfield School District ("District") is **committed to the provision of a healthful environment for all students** and employees. This policy has been developed in an effort to maintain that commitment for a healthful

---

questions and concerns relating to COVID-19." (emphasis added)
*See* https://delcopa.gov/publicrelations/releases/2021/covid_padohresumeservice.html.

[14] https://www.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinical-guidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/ at COVID-19 Guidance for Safe Schools and Promotion of In-Person Learning dated November 17, 2021 (Purposes and Key Principles: All students older than 2 years and all school staff should wear face masks at school (unless medical or developmental conditions prohibit use), regardless of vaccination status); https://policylab.chop.edu/tools-and-memos/guidance-person-education-k-12-educational-settings#:~:text=With%20evidence%20that%20COVID%2D19,of%20significant%20community%20transmission%2C%20 and at Guidance for In-person Education in K-12 Educational Settings dated January 2022 at pg. 1 (1. Continue indoor masking requirements within buildings and at school activities, regardless of vaccination status.)

[15] https://www.ssdcougars.org/district/school-board/school-board-policies.

[16] *Id.*

environment **and to safeguard the school community against the transmission   of chronic communicable, contagious and/or infectious diseases**." (emphasis added)[17]

20.     School Board Policy Manual,  Section 705 – Safety, sets forth in pertinent part:

"It is  the  policy  of  the  Springfield  School  District  ("District")  to  conduct  an  active Safety and Health Program, with the primary  objective  of  providing  a  safe  and healthy working  environment  for  all  employees, students  and visitors.   The  Program will comply  with  all  District  safety  and  health  policies  and  procedures,  as  well  as relevant  government regulations. Management  realizes  that  maintaining  a  safe  and healthy  work environment  is  consistent with our  objective  of  maintaining  a  quality education  system within  budgetary  limits,  as  well  as  being  our  legal  and  moral obligation."[18]

21.     The  School  Board,  in  turn,  delegates  to  its  Superintendent  the  responsibility  for developing  procedures  for  handling  school  emergencies,  including  "[**d]eveloping**  and submitting  to  the  Board  **a  proposed  Health  and  Safety  Plan  in  accordance  with Pennsylvania  Department  of  Education  guidance  relating  to  a  pandemic**  and implementation  of the  Health  and  Safety  Plan  in  the  form  approved  by  the  Board."[19]

22.     The  School  Districts  assigns  the  responsibility  for  the  safety  of  students  staff, visitors, and facilities to the Board.  Specifically, Policy Manual Section 800 - Operations,Code 805, Last Revised August 27, 2020, – EMERGENCY PREPAREDNESS, requires that the Board "ensure that the health and safety of students are safeguarded" and that "[m]inimum disruption to the educational program occurs."[20]

23.     Public  health  concerns  are  a  compelling  governmental  interest.   The  Supreme Court  has  determined  that  the  public  health  concern  of  "[s]temming  the  spread  of  COVID-19" qualifies as"a  compelling  interest"  of  the  government.  *Roman Catholic Diocese of Brooklyn v.*

---

[17] *Id.*
[18] *Id.*
[19] *Id.* at Delegation of Responsibility, ¶ 11.
[20] *Id.*

*Cuomo*, 592 U. S. ___, ___, 141 S. Ct. 63, at 67 (2020) (per curiam) (slip op., at 4) ("[s]temming the spread of COVID-19 is unquestionably a compelling interest."); *see also, American Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 261 (3d Cir.2003) ('ACLU II') ("Government's compelling interest in protecting minors.").

24.    Prior to the School Board's decision on January 4, 2022,[21] the School Board had previously voted to adopt Health and Safety Plans developed by the Superintendent on August 27, 2021 and December 9, 2021.

25.    In the August 27, 2021 vote, the School Board adopted a universal masking policy for grades K-6 and an optional masking policy for grades 7-12.  *See*, Exhibit 3, Health and Safety Plan dated August 27, 2021.

26.    On September 7, 2021, the statewide mask mandate announced by the Acting Secretary of Health went into effect requiring universal masking in every grade of the School District and for all staff and visitors, regardless of vaccination status, thereby overruling the optional policy in grades 7-12.  *See*, Exhibit 4, Order of the Acting Secretary Directing Face Coverings in Schools dated August 31, 2021.

27.    Thereafter, On December 9, 2021, the School Board voted to adopt a revised Health and Safety Plan requiring universal masking until January 17, 2022 for all grades pursuant to the "the guidance provided by the CDC, PaDOH, PDE, and other local health agencies regarding face coverings."  *See*, Exhibit 5, Health and Safety Plan dated December 1, 2021 (the "Plan").  After January 17, 2022, the Plan would allow for the implementation of an optional masking policy for

---

[21] It is presently unclear whether the January 4, 2022 decision to go mask optional effective January 28, 2022 was made by vote of the School Board as the School District has not posted any School Board meeting minutes since November 2021.

all grades on the date that the Pennsylvania "Acting Secretary of Health or the Delaware County Health Department determines appropriate." Exhibit 5 at 5.

28.    The School Board recognized the public health significance of COVID-19 and its impact on the District when it approved the Plan that was designed to help keep students in school and protect the students' health and well-being while in school during the national pandemic caused by COVID-19. *See* Health and Safety Plan, version 7, Draft Published August 9, 2021 (the "Plan").

29.    The Plan stated that the School District  "will continue to review on an ongoing basis the latest guidance from the CDC, Pa DOH, the Delaware County Health Department (once operational), PDE, and the CHOP Policy Lab.  This information will assist the district when reviewing our mitigation strategies for effectiveness.  The guidance will also be used to revise our SSD Health and Safety Plan (HSP) as necessary.." Exhibit 5 at p. 4; *see also id.* at p. 5 ("The District will utilize the guidance provided by the CDC, PaDOH, PDE, and other local health agencies regarding face coverings").

30.    Since stemming the spread of COVID-19 is a compelling governmental interest and the School Board recognizes this fact, then the School District should be doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Delaware County, including mandating masks for all students, staff, and visitors pursuant to the guidance of CDC, PADOH, PDE, and the CHOP Policy Lab, as the Board is required to do.

31.    According to the Board Policy Manual, the School Board is committed to providing every student the opportunity to grow and achieve.  Therefore, the School Board  will "[c]omply[] with Board policy and all applicable local, Commonwealth and federal laws and

regulations" and govern through "following an established procedure for consideration." *See* School Board Policy Manual, Section 000 – Board Governance standards/Code of Conduct, Code 011, as Revised April 2016.[22]

32.     The guidance from the CDC, PADOH, PDE, and the CHOP Policy Lab on the issue of masking in schools is identical – all of those institutions recommend universal masking for k-12 students regardless of vaccination status in counties with community transmission rates in the high or substantial categories[23].

33.     Instead of following the aforementioned guidance and supporting the compelling governmental interest by doing everything in its power to stem the spread of infection caused by COVID-19 while it is in a substantial or high level risk of transmission in Delaware County, the Board implemented a policy that removed the protection provided by universal masking from the School District regardless of the rate of transmission in Delaware County.

34.     In doing so, the School Board has put the parents of medically vulnerable students in the position of having to decide whether to keep their children at home where they will likely suffer continued learning loss or risk placing them in an environment that presents a serious risk to their health and safety.

35.     The School Board's optional mask policy forces Plaintiffs into a situation that violates Section 504 and the ADA by disproportionally impacting medically fragile students such

---

[22] https://www.ssdcougars.org/district/school-board/school-board-policies.

[23] *See* CHOP Policy Lab's Guidance for In-person Education in K-12 Educational Settings dated January 2, 2022 at https://policylab.chop.edu/tools-and-memos/guidance-person-education-k-12-educational-settings#:~:text=With%20evidence%20that%20COVID%2D19,of%20significant%20community%20transmission%2C%20 and at Guidance for In-person Education in K-12 Educational Settings dated January 2022 at pg. 1 (1. Continue indoor masking requirements within buildings and at school activities, regardless of vaccination status.); *See also,* Exhibit 1, at p. 2. ("Everyone in Delaware County should wear a mask in public, indoor settings.").

as the Plaintiffs' children.

36.    The ADA and Section 504 prohibit the exclusion of students with disabilities from public educational programs and activities.

37.    Plaintiffs in this matter are students with disabilities within the meaning of the ADA that carry an increased risk of serious complications or death in the event that they contract COVID-19.

38.    Disabling, underlying medical conditions which occur in children have been identified by the Center of Disease Control (CDC) as risk factors for severe COVID-19 infection or death—with or without the vaccination, include a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; (l) genetic disorders; and/or (m) muscular dystrophy or spinal cord injury. Further, some of the Plaintiffs and the proposed Class are ineligible to receive the vaccine under the Food and Drug Administration regulations.

## JURISDICTION AND VENUE

39.    Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein.

40.    This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C.

§1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §§ 2201–2202.

41.    This Court has subject matter jurisdiction over the ADA Title II and Section 504 of the Rehabilitation Act claims in this case pursuant to 28 U.S.C. § 1331.  Plaintiffs' claims arise under the laws of the United States and the relief sought herein is within the power of the Court to grant. *See* 29 U.S.C. § 701, *et seq*. and 20 U.S.C. § 1681, *et seq*.

42.    There exists an actual and justiciable controversy between Plaintiffs and Defendants requiring resolution by this Court.

43.    Plaintiffs have no adequate remedy at law.

44.     Venue is proper before the United States District Court for the Eastern District of Pennsylvania, Philadelphia Division, under 28 U.S.C. §1391 because all parties reside or otherwise are found in this District, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Pennsylvania.

45.    The Court has personal jurisdiction over Defendants because they are: (a) a public school district head quartered in Delaware County, Pennsylvania; (b) an elected legislative entity charged with directing the district; and (c) the individuals members of that legislative entity in their official capacity.

**PARTIES**

I.    **The Plaintiffs**

46.    JOHN DOE 1 and JANE DOE 1 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 1, who is a student in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated.

47.     JANE DOE 2 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 2, who is a student in the Springfield SchoolDistrict, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated

48.     JANE DOE 3 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 3, who is a student in in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

49.     JANE DOE 4 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 4, who is a student in in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

50.     The putative class of students whom Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 of the RA and should be shielded from discrimination by their school district.

## II.     The Defendants

51.     Defendant School District is a municipal organization charged with the education of K-12 students in the Springfield School District of four-thousand, two-hundred eighty (4,280) students.   Defendant School District is in the top 12% of the largest school districts in this Commonwealth based on the number of students enrolled.

52.     Defendant School Board is made up of nine individual school directors residing and conducting business in Delaware County, Pennsylvania.

53.     Defendant School Board is an elected school board residing and conducting business in Defendant County, Pennsylvania.

54.     Upon information and belief, Defendant, Bruce E. Lord, Jr., is Board President, a Delaware County resident and member of the School Board, sued here in his official capacity.

55.     Upon information and belief, Defendant, Jennifer H. Lofland, is Board Vice-President, a Delaware County resident and member of the School Board, sued here in her official capacity.

56.     Upon information and belief, Defendant, Kevin Keenan, is a Delaware County resident and member of the School Board, sued here in his official capacity.

57.     Upon information and belief, Defendant, Frank Agovino, is a Delaware County resident and member of the School Board, sued here in his official capacity.

58.     Upon information and belief, Defendant, Domenic Bentivegna, is a Delaware County resident and member of the School Board, sued here in his official capacity.

59.     Upon information and belief, Defendant, Jennifer Flynn, is a Delaware County resident and member of the School Board, sued here in his official capacity.

60.     Upon information and belief, Defendant, Joseph Silo, is a Delaware County resident and member of the School Board, sued here in his official capacity.

61.     Upon information and belief, Defendant, Margaret G. Rovinski, is a Delaware County resident and member of the School Board, sued here in her official capacity.

62.     Upon information and belief, Defendant, Jacqueline Guy, is a Delaware County resident and member of the School Board, sued here in her official capacity.

63.     Defendant School District and School Board are "distinct legal entit[ies] with the

capacity to be sued for injuries incurred as a result of the execution of its statutory duties and responsibilities." Thus, they are a "public entity" within the meaning of the Americans with Disabilities Act, 28 C.F.R. §35.104, and receive federal financial assistance within the meaning of the Rehabilitation Act, 29 U.S.C. §794(a).

## FACTS

### III.    COVID-19 and its Delta Variant Spread Through the Breath of Others

64.     Plaintiffs incorporate the foregoing paragraphs as is set forth in full herein

65.     COVID-19 is an extremely infectious and deadly disease that is transmitted from person to person.

66.     Experts agree that COVID-19 is primarily spread through respiratory droplets emitted when people cough, sneeze, talk, or even breathe that are then inhaled by people nearby.[24]

67.     Asymptomatic carriers of COVID-19 can also transmit the disease.  Persons who lack symptoms of COVID-19 ("asymptomatic") or do not yet know they have COVID-19 ("presymptomatic") may feel perfectly fine.  However, they are estimated to account for more than 50% of transmissions[25]

68.     The current COVID-19 variant, known as the Omicron Variant, is extremely infectious and is spread much more readily than even the Delta Variant and the original SARS-

---

[24] CDC, Scientific Brief: SARS-CoV-2 Transmission, May 7, 2021, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html ("The principal mode by which people are infected with [COVID-19] is through exposure to respiratory fluids carrying infectious virus. Exposure occurs in three principal ways: (1) inhalation of very fine respiratory droplets and aerosol particles, (2) deposition of respiratory droplets and particles on exposed mucous membranes in the mouth, nose, or eye by direct splashes and sprays, and (3) touching mucous membranes with hands that have been soiled either directly by virus-containing respiratory fluids or indirectly by touching surfaces with virus on them.").

[25] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/masking-science-sars-cov2.html.

CoV-2 strain.[26]

69.     There is no cure for COVID-19.  The vaccine has only recently been approved for children under 12 years old.  This means that children under 12 years old are only starting to have the ability or opportunity to become fully vaccinated.  The vaccine has been proven less effective for those individuals with weakened or compromised immune systems who are unable to produce a robust immune response to the vaccine.

70.     School-aged children with certain protected disabilities, including a range of underlying medical conditions, face a higher rate of severe illness from COVID-19 as compared to other children without those underlying medical conditions.  According to the CDC, "children with medical complexity, with genetic, neurologic, metabolic conditions, or with congenital heart disease can be at increased risk for severe illness from COVID-19."[27]  And, as with adults who face increased risks, "children with obesity, diabetes, asthma or chronic lung disease, sickle cell disease, or immunosuppression can also be at increased risk for severe illness from COVID-19."[28]

71.     Upon information and belief, the schools located within the Springfield School District regularly serve students with these exact disabilities— muscular dystrophy, moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2 diabetes, and weakened immune systems impacting a significant portion of the population.

72.     Defendant School District regularly serves students with these disabilities— muscular

---

[26] CDC, Delta Variant: What We Know About the Science, Aug. 6, 2021, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (noting that the Delta variant is "more than 2x as contagious as previous variants" and studies indicated that "patients infected with the Delta variant were more likely to be hospitalized").

[27] Centers for Disease Control, COVID-19: People with Certain Medical Conditions, May 13, 2021, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[28] *Id.*

dystrophy, moderate to severe asthma, chronic lung and heart conditions, cerebral palsy, Down syndrome, obesity, type-2diabetes, and weakened immune systems impacting a significant portion of the population.

### A.     The necessity of masking for safe access to school.

73.     Preventing the spread of COVID-19 is accomplished through a layered approach, including wearing face masks, washing hands, cleaning surfaces, social distancing, and introducing new airfilters to reduce the risk of COVID-19 transmission.[29]

74.     For school age children who are not yet fully vaccinated or whose disabilities result in a less robust response to the vaccine, the risk of contracting COVID-19 is most successfully mitigated through universal masking and social distancing. The ABC Science Collaborative, led by top physicians on the staff of Duke University, found that masking was effective in preventing in-school COVID-19 transmission regardless of the physical distance maintained between children as part of social-distancing efforts.[30]

75.     "When teachers, staff, and students consistently and correctly wear a mask, they protect others as well as themselves."[31] The cloth layer blocks the droplets from releasing into the environment, along with the microorganisms these particles carry. To be more specific, masks block the large droplets ("20-30 microns and up") as well as finer droplets.[32]

---

[29] See https://www.epa.gov/coronavirus/implementing-layered-approach-address-covid-19-public-indoor-spaces ("It is essential to implement a multifaceted, layered approach to reduce the risk of indoor airborne transmission of COVID-19.")

[30] https://abcsciencecollaborative.org/wp-content/uploads/2021/06/ABCs-Final-Report-June-2021.06- esig-DB-KZ-6-29-21.pdf?fbclid=IwAR3XDNVh44k8mrrfd2rcJz8rm-zOdtmlouMDkt-Tt3P3zXicWQeeU5E6wA8.

[31] Id.

[32] Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2, available at https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/maskingscience- sars-cov2.html (last visited

76.     The CDC,[33] the American Academy of Pediatrics,[34] the Pennsylvania Department of Health,[35] and CHOP Policy Lab, all recommend universal masking in schools regardless of vaccination status in an effort to reduce the risk of transmission of COVID-19.

77.     The Pennsylvania Department of Education also supports universal masking to reduce the risk of transmission of COVID-19.[36]

78.     Unmasked individuals are at risk of immediate and irreparable harm from COVID-19, as well as at a higher risk of spreading COVID-19, and the consequences of serious illness and/or death.

79.     Universal masking was successfully implemented in public school districts across Pennsylvania during the 2020 - 2021 school year.

80.     Universal masking was successfully implemented by the Springfield School District in the fall of 2021 and no schools were closed due to COVID-19 infection.

81.     Upon information and belief, universal masking was successfully implemented by Defendants during the 2020-2021 school year and the fall of 2021.

82.     Upon information and belief, universal masking would not cause any undue hardship on Defendants and would serve both the interests of Plaintiffs and the public in general by greatly decreasing the risk of COVID-19 infection spreading throughout the Defendant School District.

_____

Sept. 2, 2021).

[33] CDC, Guidance for COVID-19 Prevention in K-12 Schools, updated Aug. 5, 2021, https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/k-12-guidance.html.

[34] https://www.aap.org/en/pages/2019-novel-coronavirus-COVID-19-infections/clinical-guidance/ COVID-19-planning-considerations-return-to-in-person-education-in-schools/.

[35] *See* August 31, 2021 PADOH Order.

[36] See September 10, 2021 Directive of the PDE.

**B.      A Purely Voluntary Opt-out of Masking Pits Children Against Each Other and Creates Serious Risk of Injury and Death.**

83.      As schools reopened in the fall of 2021, COVID-19 infection numbers among school aged children continued to rise.[37]

84.      By August 2, 2021, Delaware County's COVID-19 community transmission level was moved from moderate to substantial and thereafter to high.  At that time, the CDC, the PADOH, and the PDE all recommended that the School District should immediately implement universal masking to protect the children and to limit the spread of COVID-19 within the School District and the community.

85.      On August 27, 2021, the School Board voted to approve an updated Health and Safety Plan that implemented a policy of universal masking for grades K-6 to protect the children and staff in accordance with the School Board's Policy Manual and recommendations of the CDC, the PADOH, and the PDE, because COVID-19 transmission rates in Delaware County had increased from "Moderate" in July to "Substantial" in early August.  Unfortunately, the School Board ignored its own policies and recommendations of public health institutions and permitted optional masking in grades 7-12 under a theory that vaccination availability eliminated the transmission risk.

86.      Fortunately for the students, staff, and community, the Acting Secretary of Health ordered a statewide universal masking policy for grades K-12, effective September 7, 2021, that required masking for "[e]ach teacher, child/student, staff, or visitor working, attending, or visiting a School Entity," regardless of vaccination status.  Exhibit 4 at p.3-4.

---

[37] *See* Exhibit 4.

87.     At the Board Meeting on December 9, 2021, the School Board voted to approve the Plan, which would maintain the mandatory masking policy until the Acting Secretary of Health or the Delaware County Health Department determined that it was appropriate to implement an optional masking policy.

88.     The January 4, 2022 Updated Guidance issued by the School Board, however, displayed not only a rejection of legal and medical authority, but a direct disregard for the masking policy adopted in the Plan, the School Board's own policy manual and for the School Board's constituency, and creates discrimination under the ADA and RA.[38]

89.     Despite the fact that neither the Acting Secretary of Health, the DCHD, CDC, PDE, or PADOH has determined that optional masking is appropriate, the School District has implemented the optional masking policy in all schools for all grades.

90.     Contrary to the recommendations of the CDC, PDE, and PADOH, the School Board has implemented its current optional masking policy without any regard for community transmission rates of infection and in spite of the discriminatory result under the ADA and RA.

91.     Prior to the January 4, 2022 decision, each member of the School Board was aware and had full and complete knowledge that the COVID-19 virus primarily spreads through respiratory droplets emitted when people cough, sneeze, talk, or even breathe, which are then inhaled by people nearby.

92.     Prior to the January 4, 2022 decision, each member of the Board was made aware and had full and complete knowledge that COVID-19 was rapidly spreading through Delaware County and the community transmission rate was high.

_____

[38] See, 1/4/2022 Updated Guidance at https://www.ssdcougars.org/reopening-schools (making masks optional for all grades effective January 31, 2022).

93.     Prior to the January 4, 2022 decision, each member of the School Board was made aware and had full and complete knowledge that over 50% of COVID-19 transmissions occur from individuals who are pre-symptomatic or asymptomatic.

94.     Prior to the January 4, 2022 decision, each member of the School Board was made aware and had full and complete knowledge that a layered approach to preventing the spread of COVID-19 is necessary and, in order to be effective, wearing masks is required.

95.     Prior to the January 4, 2022 decision, each member of the School Board was made aware and had full and complete knowledge that protecting public health is a compelling governmental interest, which is more important than individual parent's legitimate rights to raise their children as they see fit.

96.     Prior to the January 4, 2022 decision, each member of the School Board was made aware and had full and complete knowledge that individual parent's legitimate rights are limited when confronted by a public health issue.

97.     Defendants' decision to institute a health and safety plan which permits optional masking pits child-against-child, endangering the lives of children with disabilities. Parents of school children with disabilities are forced to hope other parents will require masking, and not opt-out. But when parents permit their children to opt-out of mask wearing, medically fragile children with disabilities and indeed all children are subjected to serious illness or even death as a result of COVID-19 being spread through unmasked breathing, coughing, and sneezing.

98.     In the School District, if optional masking is permitted to continue, the Plaintiffs' children and those similarly situated will be forced to either attend classes in close proximity to unmasked students, faculty, and staff, or to not attend school in person.

99.     Disabled children being forced to attend school remotely while non-disabled students can attend school in person because the School District refuses to make accommodations of universal masking so disabled can attend school in-person is discriminatory in violation of the ADA and RA.

100.    The Plaintiffs' children and those similarly situated use the same hallways, bathrooms, lunchrooms, and classrooms as their fellow-masked and unmasked classmates.

101.    The Plaintiffs' children and those similarly situated are entitled to safe, fundamental, and non-discriminatory access to their school buildings with universal masking of teachers, custodians, parent volunteers, and students.

102.    The necessity for such masking is greater now than ever. Yet, the policy of the School District to allow optional masking subjects both healthy children as well as children with certain disabilities to serious illness or even death by exercising their fundamental, non-discriminatory right to access their public institutions.

**C.      The School District and the Board of Directors Duties and Responsibilities to Provide a Safe and Healthy Environment for the School Children.**

103.    Defendant School Board is charged by the State with the management and supervision of the public elementary and secondary schools in the District. It derives its authority to govern the local schools directly from the Constitution of the State of Pennsylvania and the rules and regulations of the Pennsylvania Department of Education. School Board Governance and Operations Legal Status - Board of School Directors, Code 2001, 24 P.S. 301 *et seq*.

104.    The School District is governed by a Board of School Directors consisting of nine (9) directors, each of whom is elected on a regional basis for a term of four years. *See* Board of School Directors, Code 2001, 24 P.S. 301 *et seq*.

105.    "A school shall make specific and adequate provision for protecting the health and safety of students and for safeguarding their physical welfare."  22 Pa. Code, § 51.22 General Safety.

106.    A school district is responsible "to comply with the requirements of Section 504 and its implementing regulations at 34 CFR Part 104 (relating to nondiscrimination on the basis of handicap in programs and activities receiving or benefitting from federal financial assistance) and implements the statutory and regulatory requirements of Section 504."  22 Pa. Code, § 15.1 (a) Purpose.

107.    "Section 504 and its accompanying regulations protect otherwise qualified handicapped students who have physical, mental or health impairments from discrimination because of those impairments."  22 Pa. Code, § 15.1 (b) Purpose.

108.    "The law and its regulations require public educational agencies to ensure that these students have equal opportunity to participate in the school program and extracurricular activities to the maximum extent appropriate to the ability of the protected handicapped student in question."  22 Pa. Code, § 15.1 (b) Purpose.

109.    "School districts are required to provide these students with the aids, services and accommodations that are designed to meet the educational needs of protected handicapped students as adequately as the needs of nonhandicapped students are met.  These aids, services and accommodations may include, but are not limited to, special transportation, modified equipment, adjustments in the student's roster or the administration of needed medication.  For purposes of the chapter, students protected by Section 504 are defined and identified as protected handicapped students."  22 Pa. Code, § 15.1 (b) Purpose.

110.    "A school district shall provide each protected handicapped student enrolled in the

district, without cost to the student or family, those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination and to the maximum extent appropriate to the student's abilities." 22 Pa. Code, § 15.3. General.

    **D.**    **Defendants' Actions Constitute a Real and Immediate Violation of Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act**.

    111.    Plaintiffs are qualified individuals with disabilities under Title II of the ADA and Section 504.

    112.    Defendants have implemented an optional masking policy that has the effect of excluding from participation in or denying the benefits of the services, programs, or activities of the School District on Plaintiffs and similarly situated students with disabilities, by reason of their disabilities.

    113.    Defendants' January 4, 2022 update to the Plan now sets forth that mask wearing will be optional for all students, staff, and visitors while inside the school building and/or on school grounds.

    114.    Defendants' optional masking policy, while facially neutral, predictably produces a disproportionate impact on Plaintiffs, and those similarly situated (namely, children with disabilities), who cannot access the school building without increased risk of death and debilitating illness from COVID-19.

    115.    Defendants' January 4, 2022 update to the Plan thereby excludes Plaintiffs from access to school buildings and from their in-person education.

    116.    Plaintiffs are students with disabilities, including certain underlying medical conditions, which increase their risk of contracting COVID-19 and/or increase their risk of serious

complications or death from a COVID-19 infection.

117. Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("Section 504" or "Rehabilitation Act") provide broad protections for individuals with disabilities.

118. Both federal disability-rights laws prohibit outright exclusion, denial of equal access, or unnecessary segregation for students with disabilities in public education.

119. Both laws also prohibit methods of administration that defeat the fundamental goals of public schools, that is, to provide an education.

120. Finally, both federal disability rights laws impose affirmative obligations on covered entities to proactively provide reasonable modifications or reasonable accommodations to ensure that individuals with disabilities have an equal opportunity to benefit from their public education.

121. School districts with students who have disabilities, including underlying medical conditions, that make them more likely to contract and/or become severely ill from a COVID-19 infection, have a legal obligation to ensure that those children can attend school with the knowledge that the school district has followed recommended protocols to ensure their safety.

122. Currently, the CDC's guidance, the PADOH's protocol—as well as those recommended by the PDE, the American Academy of Pediatrics and the American Medical Association— all include universal masking while indoors regardless of vaccination in counties with substantial or high community transmission rates.

## CLASS ALLEGATIONS

123. Plaintiffs bring this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedures on behalf of themselves and a class of similarly situated individuals consisting of all

students with disabilities that make them medically vulnerable to severe infection and/or death from COVID-19 and who attend public school in the Springfield School District (the "Class").

124.    The Class is defined as follows: all current and future K-12 students attending or wishing to attend public school in the Springfield School District during the coronavirus pandemic who are unable to obtain a vaccine or for whom the vaccine is of limited efficacy due to their compromised or suppressed immune system, as well as all current and future children who attend school in Springfield School District who have: (a) lung disease, including asthma, chronic obstructive pulmonary disease (e.g., bronchitis or emphysema), or other chronic conditions associated with impaired lung function; (b) heart disease, such as congenital heart disease, congestive heart failure  and coronary artery disease; (c) chronic liver or kidney disease (including hepatitis and dialysis patients); (d) diabetes or other endocrine disorders; (e) hypertension; (f) compromised immune systems (such as from cancer, HIV, receipt of an organ or bone marrow transplant, as a side effect of medication, or other autoimmune disease); (g) blood disorders (including sickle cell disease); (h) inherited metabolic disorders; (i) history of stroke; (j) neurological or developmental disability; (k) cancer or cancer treatments; and/or (l) muscular dystrophy or spinal cord injury.

125.    This action has been brought and may properly be maintained as a class action under federal law.  It satisfies the numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Fed. R. Civ. P. 23(a).

126.    Joinder is impracticable because (1) the Class is numerous; (2) the Class includes future members, and (3) the Class members includes many individuals who are incapable due to limited financial means of instituting individual lawsuits.

127.     Numerosity: There are well beyond the necessary number of children in the proposed Class to warrant class certification.  Based on publicly available data, 174 of the Springfield School District student body suffer from disabilities protected by the ADA and RA.

128.     Commonality: Common questions of law and fact exist as to all members of the proposed Class, including: (a) whether Defendants' policies and practices discriminate against the members of the Class in violation of the ADA and the Rehabilitation Act; and (b) whether the failure of Defendants to enforce its own order requiring masking in all school located in Defendant School District discriminates against the members of the Class in violation of the ADA and the Rehabilitation Act.

129.     Typicality: The claims of the Named Plaintiffs are typical of those of the Class as a whole, including because (a) each Named Plaintiff is currently attending school at a school within Defendant School District and (b) the Named Plaintiffs' and all of the Class members' claims arise from the same wrongful acts, omissions, policies, and practices of Defendants, and are based on the same legal theories.

130.     Adequacy: The Named Plaintiffs have the requisite personal interest in the outcome of this action and will fairly and adequately protect the interests of the Class.  The Named Plaintiffs have no interests adverse to the interests of the proposed Class.

131.     Defendants have acted on grounds generally applicable to all proposed Class members.

132.     This action seeks declaratory and injunctive relief.  Injunctive or declaratory relief is proper on a class-wide basis, Plaintiffs therefore seek Class certification under Rule 23(b)(2).

133.     In the alternative, the requirements of Rule 23(b)(1) are satisfied because prosecuting

separate actions would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards for the party opposing the proposed Class.

134.    Common questions of fact or law predominate, and class action is superior device for adjudication Rule 23(b)(3).

## CAUSES OF ACTION
## COUNT I
## DISCRIMINATION ON THE BASIS OF DISABILITY IN VIOLATION OF THE ADA

135.    Plaintiffs, on behalf of themselves and those similarly situated, repeat and re-allege each and every allegation above, as if set forth in full herein.

136.    The ADA provides a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.  42 U.S.C. §§ 12101(b)(1) & (2).

137.    Enactment of the ADA reflected deeply held American ideals that treasure the contributions that individuals can make when free from arbitrary, unjust, or outmoded societal attitudes and practices that prevent the realization of their full potential.

138.    The ADA embodies a public policy committed to the removal of a broad range of impediments to the integration of people with disabilities into society and strengthening the federal government's role in enforcing the standards established by Congress.

139.    The ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

140.    The School District's optional masking policy is denying the District from providing

the children of Plaintiff s and those similarly situated with the protections they need to attend school safely. By permitting optional masking, the Board has placed the lives of medically vulnerable children, including Plaintiffs' children, who have disabilities under the ADA, in danger. In doing so, Defendants have violated the regulations and provisions of the ADA:

   a.   Defendants are failing to make a reasonable modification, under circumstances where it is required, in violation of 28 C.F.R. § 35.130(b)(7);

   b.   Defendants are excluding Plaintiffs from participation in public education in violation of 42 U.S.C. § 12132 and 28 C.F.R. § 35.130;

   c.   Defendants are failing to make their services, programs, and activities "readily accessible" to disabled individuals, in violation of 28 C.F.R. § 35.150;

   d.   Defendants are administering a policy that has the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability and that has the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities, in violation of 28 C.F.R. § 35.130(b)(3).

141. The ADA further prohibits any public entity from, either directly or through contractual or other arrangements, using any criteria or methods of administration that (a) have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability. 28 C.F.R. §§ 35.130 (b)(3)(I) & (iii).

142. Defendants do not have the authority to circumvent the ADA and its protections for students with disabilities through School Board votes on policies.

143. Excluding children from the public school classrooms because of a disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

144. Plaintiffs, in their own capacities and as parents of disabled children, seek to compel Defendants to impose a mandatory mask mandate with limited medical exceptions only where such exceptions are supported by proper medical documentation as this is the only reasonable means to provide the disabled children with "non-discriminatory access to public institutions" under the ADA.

145. Plaintiffs' children are individuals with disabilities recognized under the Americans with Disabilities Act.

146. Plaintiffs' children are otherwise qualified to participate in school.

147. Plaintiffs' children, as disabled students, will be and have been deprived benefits and services to which all students are entitled, specifically the right to attend and participate in all in-person educational opportunities offered by the school for which they are qualified.

148. JOHN DOE 1 and JANE DOE 1 live in the School District and bring claims in their own capacity and as parents of CHILD DOE 1, who is a student in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and bring this action on behalf of themselves and those similarly situated.

149. CHILD DOE 1 is a minor and is vaccinated, but not yet eligible to receive a vaccine booster.

150. Although not diagnosed with a learning disability, CHILD DOE 1 has demonstrated difficulty learning in a virtual school setting and has already fallen behind their peers as a result of prior periods of virtual learning. Consequently, it is essential for their education that they be able to attend school in person.

151. According to the medical team who advises JANE DOE 1, regarding the medical care and treatment of CHILD DOE 1, universal masking is essential for safe schooling for CHILD DOE

30

1 because of serious health-related issues. CHILD DOE 1 is medically vulnerable and requires individualized adult assistance. CHILD DOE 1 is classified as Otherwise Health Impaired, with medical conditions including muscular dystrophy, which requires weekly physical therapy services provided in-person in School District facilities, and respiratory and cardiovascular issues.[39]

152.    CHILD DOE 1 is directly and prominently negatively affected by virtual learning. As such, JOHN DOE 1 and JANE DOE 1 want to keep, and have a right to keep, CHILD DOE 1 educated via in-person learning, which requires a layered approach of protection, including universal masking.

153.    JOHN DOE 1 and JANE DOE 1 have legitimate and serious concerns about the School District's optional masking policy implemented January 31, 2022. This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 1, as the decision relates to attending school in-person.

154.    CHILD DOE 1's medical team opines that in-person instruction is necessary for CHILD DOE 1 in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

155.    JOHN DOE 1, JANE DOE 1, and CHILD DOE 1 are concerned about the impact of optional masking on CHILD DOE 1's health and safety, as well as on family and friends. Even with universal masking and vaccinations, CHILD DOE 1's disabilities make it challenging to catch up after having missed school. Therefore, all preventative measures for a layered approach to mitigate the spread of COVID-19, including universal masking, are necessary to help keep CHILD DOE 1 in school in order for CHILD DOE 1 to access the building and receive educational and

---

[39] *See* Exhibit 2. According to the Special Education Data Report for 2020-2021 school year, the School District includes 174 disabled students designated as "Other Health Impairment."

31

developmental services from the School District .

156.    JANE DOE 2 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 2, who is a student in the SchoolDistrict, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of themselves and those similarly situated.

157.    According to the medical team who advises JANE DOE 2, regarding the medical care and treatment of CHILD DOE 2, universal masking is essential for safe schooling for CHILD DOE 2 because of serious health-related issues.  CHILD DOE 2, who is a minor and is vaccinated but not yet eligible to receive a vaccine booster, is classified as Otherwise Health Impaired, with medical conditions including asthma and an autoimmune disease, and takes immunosuppressant and emergency asthma medications.

158.    In addition, CHILD DOE 2 only recently returned to in-person schooling, having attended virtual schooling throughout the pandemic until they were able to be fully vaccinated and attend school in a universal masking environment.

159.    CHILD DOE 2 is directly and prominently negatively affected by virtual learning. As such, JANE DOE 2 wants to keep, and has a right to keep, CHILD DOE 2 educated via in-person learning, which requires a layered approach of protection, including universal masking.

160.    JANE DOE 2 has legitimate and serious concerns about the School District's optional masking policy implemented January 31, 2022.  This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 2, who lives with multiple family members with medical issues that put them at high risk for severe complications from COVID-19.

161.    Furthermore, the depression suffered by CHILD DOE 2 as a result of the social

isolation inherent in virtual schooling makes in-person instruction necessary for CHILD DOE 2 in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

162.    JANE DOE 2 and CHILD DOE 2 are concerned about the impact of optional masking on CHILD DOE 2's health and safety, as well as on family and friends.  Even with universal masking and vaccinations, CHILD DOE 2's disabilities make it challenging to catch up after having missed school.  Therefore, all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 2 in school in order to provide for CHILD DOE 2 to access the building and receive educational services from the School District.

163.    JANE DOE 3 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 3, who is a student in in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

164.    According to the medical team who advises JANE DOE 3, regarding the medical care and treatment of CHILD DOE 3, universal masking is essential for safe schooling for CHILD DOE 3 because of serious health-related issues.  CHILD DOE 3, who is a minor and is partially vaccinated but not yet eligible to receive a second dose, is classified as Otherwise Health Impaired, with medical conditions including asthma causing hospitalization that requires emergency medications.

165.    CHILD DOE 3 is directly and prominently negatively affected by virtual learning.  As such, JANE DOE 3 wants to keep, and has a right to keep, CHILD DOE 3 educated via in-person learning, which requires a layered approach of protection, including universal masking.

166.    JANE DOE 3 has legitimate and serious concerns about the School District's optional masking policy implemented January 31, 2022.  This decision is causing a great deal of stress

and anxiety, particularly for CHILD DOE 3, who lives with multiple family members with medical issues that put them at high risk for severe complications from COVID-19.

167.    CHILD DOE 3's medical team opines that in-person instruction is necessary for CHILD DOE 3 in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

168.    JANE DOE 3 and CHILD DOE 3 are concerned about the impact of optional masking on CHILD DOE 3's health and safety, as well as on family and friends. Even with universal masking and vaccinations, CHILD DOE 3's disabilities make it challenging to catch up after having missed school. Therefore, all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 3 in school in order to provide for CHILD DOE 3 to access the building and receive educational services from the School District.

169.    JANE DOE 4 lives in the School District and brings claims in her own capacity and as parent of CHILD DOE 4, who is a student in in the Springfield School District, is medically fragile, and considered to be disabled under the ADA, and brings this action on behalf of herself and those similarly situated.

170.    According to the medical team who advises JANE DOE 4, regarding the medical care and treatment of CHILD DOE 4, universal masking is essential for safe schooling for CHILD DOE 4 because of serious health-related issues. CHILD DOE 4, who is a minor and is vaccinated but not yet eligible to receive a vaccine booster, is classified as OtherwiseHealth Impaired, with medical conditions including chronic asthma with history of hospitalizations that requires emergency and maintenance medications and anxiety requiring regular mental health counseling.

171.    CHILD DOE 4 is directly and prominently negatively affected by virtual learning.

As such, JANE DOE 4 wants to keep, and has a right to keep, CHILD DOE 4 educated via in-person learning, which requires a layered approach of protection, including universal masking.

172.    Although not diagnosed with a learning disability, CHILD DOE 4 has demonstrated difficulty learning in a virtual school setting and has already fallen behind their peers as a result of prior periods of virtual learning.  Consequently, it is essential for their education that they be able to attend school in person.

173.    JANE DOE 4 has legitimate and serious concerns about the School District's optional masking policy implemented January 31, 2022.  This decision is causing a great deal of stress and anxiety, particularly for CHILD DOE 4, who lives with multiple family members with medical issues that put them at high risk for severe complications from COVID-19.

174.    CHILD DOE 4's medical team opines that in-person instruction is necessary for CHILD DOE 4 in a Least Restrictive Environment as required by the ADA and Section 504 of the RA.

175.    JANE DOE 4 and CHILD DOE 4 are concerned about the impact of optional masking on CHILD DOE 4's health and safety, as well as on family and friends.  Even with universal masking and vaccinations, CHILD DOE 4's disabilities make it challenging to catch up after having missed school.  Therefore, all preventative measures for a layered approach from the spread of COVID-19, including universal masking are necessary to help keep CHILD DOE 4 in school in order to provide for CHILD DOE 4 to access the building and receive educational services from the School District.

176.    As of January 31, 2022, the School District and School Board have implemented an optional masking policy for all students, staff, and visitors to School District endangering the health and safety of its 174 students who are designated as "Other Health Impairment," are

medically fragile, and considered to be disabled under the ADA like CHILD DOES 1-4.

177.    Upon information and belief, the School District and School Board do not intend to reinstate its prior universal mask mandate to protect its 174 students who are designated as "Other Health Impairment," are medically fragile, and considered to be disabled under the ADA like CHILD DOES 1-4.

178.    CHILD DOES 1-4 all suffer from disabilities under the ADA, detailed above, and are thus protected by the ADA and Section 504 from discrimination by reason of their disabilities.

179.    The putative class of students Plaintiffs represent similarly suffer from a host of conditions warranting protection under the ADA and Section 504 and should be shielded from discrimination by their school district.

180.    Excluding students with disabilities that make them more susceptible to serious illness or death from COVID-19 from accessing public school classrooms, facilities, and educational, social, and developmental services by reason of their disability is precisely the type of discrimination and segregation that the ADA and its amendments aim to prevent and specifically prohibit.

181.    In-person education is the optimal form of instruction and that public health officials all recommend universal masking in public schools to prevent transmission of COVID 19.

182.    According to the CDC and PADOH, the COVID-19 community transmission rate is "high" indicating that the risk of COVID-19 infection in a school environment is at its most elevated level.

183.    The School Board's decision to repeal universal masking and implement an

optional masking policy during a period of "high" community transmission rate created a discriminatory environment and disparate impact under Title II of the ADA and the RA for children with disabilities in the School District.

184. The School Board's facially neutral masking policy disparately impacts Plaintiffs' medically fragile children by preventing their in-person access to education and other services with the School District's facilities without incurring a substantially increased risk of severe illness or death.

185. In order to access equal educational services and critical social and developmental services, Plaintiffs' children, and those similarly disabled, are forced to risk their health due to the School Board's optional masking policy. Children without disabilities and their parents do not face such a stark choice.

186. The disparate impact of the School Board's policy on children with disabilities is readily apparent. By entering a school without universal masking during the pandemic, the Plaintiffs' children, and those similarly disabled, risk death or hospitalization due to their undisputed health and developmental related disabilities.

187. While the School Board's decision to rescind universal masking was facially neutral, its implementation has produced a discriminatory result - namely the exclusion of Plaintiffs' children, and similarly situated disabled students, from accessing the school building on equal terms as students without disabilities.

188. The negative impact of the School Board's optional masking policy is narrowly limited to a discrete group of students: those with disabilities that put them at a higher risk of severe complications from COVID-19.

189.    There are no reasonable accommodations in an optional masking environment that would permit Plaintiffs' children to access the School District's buildings and educational, social, and developmental services on equal terms as those students without disabilities.

## COUNT II

### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973

190.    Plaintiffs, on behalf of themselves and those similarly situated, do repeat and reallege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

191.    Plaintiffs' children and those similarly situated are students in the School District with disabilities that substantially limit one or more major life activity, and therefore, are considered to be persons with a disability under Section 504 of the Rehabilitation Act, as amended.  *See* 29 U.S.C. § 705(9)(B), as amended by the ADA Amendments Act, Pub. L. 110-325, Sec. 7, 122 Stat. 3553 (Sept. 25, 2008).

192.    Plaintiffs are otherwise qualified under Section 504 of the Rehabilitation Act because they meet the essential eligibility requirements for public education in the Commonwealth of Pennsylvania.

193.    Defendants, in their official capacities, are the recipients of federal financial assistance.

194.    The School Board's January 4, 2022 decision to implement optional masking is denying the District the ability to provide the Plaintiffs' children, and others similarly situated with the accommodations they need to attend school safely.

195.    Plaintiffs' children are individuals with a disability recognized under the Section 504 of the Rehabilitation Act.

196.    Plaintiffs' children are otherwise qualified to participate in school.

197.    A public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a State, or for such combination of school districts or counties, are recognized in a State as an administrative agency for its public elementary schools or secondary schools.

198.    Although a state is not required to maximize the potential of every disabled child, it must supply an education that provides "significant learning" and "meaningful benefit" to the child.

199.    Section 504 of the Rehabilitation Act provides that: "No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. " 29 U.S.C. § 794 (a).

200.    Defendants have violated the regulations and provisions of Section 504, as follows:

    a.    Defendants are excluding Plaintiffs from participation in public education, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

    b.    Defendants are using methods of administration that have the effect of subjecting Plaintiffs to discrimination on the basis of disability, in violation of 34 C.F.R. §104.4(b)(4); and

    c.    Defendants are using methods of administration that have the effect or purpose of defeating or substantially impairing accomplishment of the objectives of the public education provided by school districts, in violation

of 34 C.F.R. § 104.4(b)(4).

201.    Defendants do not have the authority to circumvent Section 504 and its protections for students with disabilities through School Board votes and decisions.

202.    Excluding children from public school classrooms because of a disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

203.    Excluding children with disabilities that make them more susceptible to serious illness or death from COVID-19 from public school classrooms, facilities, and educational, social, and developmental services by reason of their disability is precisely the type of discrimination and segregation that Section 504 aims to prevent and specifically prohibit.

## REQUEST FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

204.    Plaintiffs repeat and re-allege the allegations in previous paragraphs of this Complaint as if fully alleged herein.

205.    Plaintiffs seek a temporary restraining order enjoining the School Board from enforcing the January 4, 2022 decision permitting optional masking.

206.    Plaintiffs seek a preliminary injunction enjoining the Defendants during the course of this litigation from enforcing the January 4, 2022 decision permitting optional masking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and those similarly situated respectfully request that this Court grant the following relief:

A.    Assume jurisdiction of this action;

B.      Certify this Petition as a class action;

C.      Declare that the School Board's January 4, 2022 decision permitting optional masking violates the rights of Plaintiffs and those similarly situated under the Americans with Disabilities Act and Section 504;

D.      Issue a temporary restraining order enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting optional masking in the School District;

E.      Issue preliminary and permanent injunctive relief enjoining Defendants from violating the Americans with Disabilities Act and Section 504 by permitting parents optional masking;

F.      Award Plaintiffs their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

G.      Grant such other and further relief as may be just, equitable and proper.

Respectfully submitted,
De Gisi Law Group, LLC

*/s/ Carmen A. De Gisi*
Carmen A. De Gisi
PA ID No. 208989
*Counsel for Plaintiffs*
De GISI LAW GROUP, LLC
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
(610) 897-8721
cdegisilaw@gmail.com

Date: February 1, 2022

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Complaint was served by

e-mail on this Tuesday, February 1, 2022, addressed to the below parties and counsel:

SSD SOLICITOR
MARK SERENI, ESQUIRE
The Law Firm of DiOrio & Sereni, LLP
21 West Front Street
Media, Pennsylvania 19063
mas@dioriosereni.com

MEMBER SILO
Joseph.Sillo@ssdcougars.org

MEMBER LORD
Bruce.Lord@ssdcougars.org

MEMBER ROVINSKI
margaret.rovinski@ssdcougars.org

MEMBER LOFLAND
jennifer.lofland@ssdcougars.org

MEMBER GUY
Jacqueline.guy@ssdcougars.org

MEMBER FLYNN
jennifer.flynn@ssdcougars.org

MEMBER KEENAN
Kevin.Keenan@ssdcougars.org

MEMBER BENTIVEGNA
dom.bentivegna@ssdcougars.org

MEMBER AGOVINO
frank.agovino@ssdcougars.org

SSD SUPERINTENDENT
Anthony.barber@ssdcougars.org.org

Respectfully submitted,
De Gisi Law Group, LLC

*/s/ Carmen A. De Gisi*
Carmen A. De Gisi
PA ID No. 208989
*Counsel for Plaintiffs*
De GISI LAW GROUP, LLC
462 Germantown Pike, Suite 11
Lafayette Hill, PA 19444
(610) 897-8721
cdegisilaw@gmail.com